GLADNEY, Judge ad hoc.
This suit was filed under the provisions of the Workmen’s Compensation Act by Mrs. Christine Sims, plaintiff, against Brown Paper Industries, Inc., defendant. *312 She alleges that on August 12, 1950, while employed as a machine operator at the paper bag mill of the defendant, she visited the rest room, where she slipped and fell, the back of her head and her back striking the wet concrete floor and causing her pain and producing disability; that she was taken to the office of the company doctor where she received a brief examination, was given sedatives to relieve the pain, and told to return for further examination on August 14th. She asserts that she was pregnant but did not realize this until told by the doctor. She testified she has been unable to use her legs to stand upon or walk and her lower extremeties from her hips down have remained in a constant state of paralysis. On Octqber 22, 1950, she was delivered of twins born prematurely and who died a few hours after birth.
The issues presented for our consideration are:
1. Did Mrs. Sims suffer an accident on August 12, 1950?
2. -Does Mrs. Sims suffer any disability having a causal connection with the alleged fall of August 12, 1950?
3. Has Mrs. Sims sustained the burden of proof by a preponderance of the evidence ?
. The judgment appealed from rejected plaintiff’s demands and dismissed her suit, holding that she had failed to establish her case by a preponderance of the evidence.
The defendant earnestly contends that the fall of Mrs. Sims was feigned, and considerable testimony was adduced on just how wet the floor was and whether plaintiff’s shoes were more slippery with paste used in the paper bag process. But irrespective of the weight of this evidence, plaintiff says she fell and no witness was produced who could testify to the contrary, and consequently we must accept her testimony on this point and determine if injury was caused by the alleged fall.
To establish plaintiff’s condition subsequent to August 12th, lay witnesses consisting of neighbors, Walter Heckford and Mrs. Nancy Cauthron, and her sister-in-law, Mrs. Rose Sims, all testified as to the inability of appellant to move her legs and of her appearance of paralysis in these lower extremities, as well as her apparent pain and suffering. The drivers of the vehicles conveying her to the doctors’ offices testified that on each occasion she was. picked up and carried into the office. On some occasions 'an ambulance was used for conveyance, and when the case was tried, she was brought into the court room on a stretcher upon which she lay throughout the trial.
Professional opinions were given by Drs-J. T. French and J. E. Walsworth that tests performed by them upon the legs of plaintiff produced no evidence of pain or sensitivity. Dr. French did not attempt to' state the cause of this condition. Dr. Wals-worth gave as hs opinion that the analgesia was brought on by the effects from the fall; that as a result of the severe blow to the head, there occurred in the brain pe-techial hemorrhages (hemorrhages that occur in minute points beneath the skin) and these produced a loss of function of the lower extremities.
Dr. C. P. Gray, called by the plaintiff, testified from official records of the Charity Hospital as of October 11th that Mrs. Sims gave a history of bleeding and pain in the abdomen; of having fallen on a wet concrete floor nine weeks prior thereto; of inability to walk and numbness in her legs or thighs since the fall. She stated to him she could move her legs but they felt numb; that the urinal bleeding began about one week before that date (October 11th) and that she was from seven to seven and one-half months pregnant. Upon examination, he found her patella and achilles reflexes normal and that she could move her legs. He concluded she did not have a paralytic condition. Pie also testified the twins were born too premature to live and died shortly after birth.
The medical testimony of Drs. J. Q. Graves, A. Scott Hamilton and J. W. Cum-mins uniformly concludes that plaintiff has no disability, clearly indicating, where they do not directly say so, that Mrs. Sims is a malingerer.
Dr. Graves testified that when plaintiff arrived at his office on August 12th she complained of pain in her back and head. *313 Upon examination he could find no evidence of any trauma or injury or bruises or lacerations or abrasions on her, but found symptoms suggestive of pregnancy. He made a further examination on August 14th. X-ray pictures were negative as to the bony structure of the back and pelvis, but confirmed pregnancy. He placed the patient in the St. Francis Sanitarium August 18-20 for observation, and treated her with diathermy until September 1st when he concluded there was no disability and discharged her.
After the attention given her by Dr. Graves, she was examined further by Drs. Scott Hamilton and J. W. Cummins, both of whom made findings of no disability after thorough clinical, X-ray and physical examinations.
Regarding the opinion advanced that petechial hemorrhages had so injured the brain as to account for the loss of functional use of the legs, Dr. Hamilton said: “The portions of the brain that would have to be involved, would be a most — well, almost unthinkable thing. There would have to be both sides of the brain involved in exactly the same spot on each side. It would be over the motor area involving from the pelvis on down, and it would have to foe exactly the same.”
Dr. Cummins reported in part his negative findings as to disability: “The back is of normal contour and no deformities are felt or seen. No muscle spasm is present, and the muscles do have good tone and there is no evidence of weakness, muscular weakness. * All movements are present and normal. The upper extremities are equal in size, pulsations are good, muscle tone is good, reflexes are present and normal. Reaction to pain stimuli is normal. The lower extremities show no muscular atrophy and no deformities. Muscle tone is good. And placing the legs in various positions while lying on the table, the parts are held in their place and there is no falling or movement of the parts. Resistance is offered to movement until she is asked to relax. This procedure was tried in many positions and degrees of flexion of the knee and hip and with internal and external rotation of the hips while the knees and thighs were flexed and in all she held the parts in position as placed. At no time did she allow her legs to fall. And on one occasion she lowered them slowly and in a normal manner.”
The evidence does not support the theory that the fall produced the premature birth of the twins. The preponderance of the professional opinion was that if miscarriage resulted from such a fall, it would have occurred within a week. Plaintiff testified that the urinal bleeding did not commence until three weeks after the fall. The delivery came forty days later, at which time plaintiff was six months or longer pregnant.
During the trial certain tests by Dr. Hamilton were made in the presence of the court to determine the loss of sensation in plaintiff's legs. After these tests he repeated she was without disability.
Several attacks were made on the credibility of plaintiff and the validity of her claim. The first of these dealt with her knowledge prior to the accident of her pregnancy. She informed Dr. Graves on August 12th she did not know she was pregnant. In this she was contradicted by Mrs. R. E. Doughtie, Mrs. Imogene Coronado, and Deputy Sheriff W. S. Booth. Another witness, Mrs. J. M. Stuckey, testified that prior to August 12th, in her presence, Mr. and Mrs. Sims planned to bring about an accident claim for the purpose of collecting money. This was denied by Mrs. Sims, but Mr. Sims neither testified nor was his •absence accounted for. It was shown by competent evidence that plaintiff had served terms in the state penitentiary for the crimes of forgery and bigamy.
As prerequisite to recovery of workmen's compensation, an employee must prove an accident occurring within the scope of and course of employment and also show a causal connection between such accident and the alleged injuries and disability. Clark v. Southern Kraft Corporation, La.App., 200 So. 489; Temple v. Martin Veneer Company, La.App., 200 So. 676; Hano v. Natalbany Lumber Company, Ltd., La.App., 4 So.2d 104. The Workmen’s Compensation Act, LSA-R.S. 23:1317, provides: “ * * * The court *314 shall not be bound by technical rules of evidence or procedure other than as herein provided, but all _ findings of fact must be based upon competent evidence, and all compensation payments provided for in this Chapter, shall mean and be defined to be for only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. * * * ”
The judge a quo rejected appellant’s demands and in written reasons assigned therefor 'held the evidence insufficient to support a judgment in favor of appellant. We agree with his conclusion and accordingly the judgment appealed from is affirmed. Costs to be borne by appellant.
KENNON, J., not participating.