AYRES, Judge.
Plaintiff sought to recover of his employer and the employer’s compensation insurance carrier workmen’s compensation as for total and permanent disability or, in the alternative, as for the loss or the serious permanent impairment of the usefulness of a physical function, that is, the sense of smell, because of accidental injuries allegedly sustained June 11, 1957. In a supplemental petition, plaintiff claims to have sustained an injury to his nervous system producing a post-traumatic neurosis on account of which he again alleges he is totally incapacitated. Plaintiff was paid compensation from the date of injury to October 15, 1957.
That plaintiff was disabled beyond the period for which he was paid compensation or that he suffered a loss or impairment of the sense of smell was denied by the defendants. After trial, in resolving the issues thus presented, the court concluded plaintiff had failed to establish by a preponderance of the evidence either of his demands and, accordingly, dismissed his suit. From the judgment thus rendered, plaintiff has appealed.
The facts as to the occurrence of the accident may be briefly stated. Plaintiff was engaged in sawing pulpwood by means of a power saw. While thus engaged in cutting a tree down, the tree, before it was completely severed from the stump, split upwards and the force generated in the fall caused the butt of the tree to kick backwards and strike plaintiff in the face.
Immediately following the accident, plaintiff was hospitalized at the Fraser Clinic at Many, Louisiana, where Dr. S. F. Fraser observed plaintiff had suffered an extensive laceration of the base of the nose, as well as a laceration above the left eye, which, together with the swelling, indicated to the doctor a serious bruise. Examination revealed a compound fracture of the nose and a fracture of the left frontal bone. The fracture of the nasal bone was reduced and the laceration sutured by Dr. Fraser. Plaintiff was given antibiotics to prevent infection and sedatives for the relief of pain and discomfort. No infection set in, plaintiff’s condition improved, and he was released after 10 days and permitted to return home. Shortly thereafter he returned to the hospital, complaining of soreness in his neck, whereupon he was again hospitalized for several days in order to relieve a condition thought by Dr. Fraser to have been caused by muscle *833 spasm. For approximately four months thereafter plaintiff continued under treatment by Dr. Fraser.
This case presents for determination questions of fact which can only be resolved by a consideration of the testimony of the medical experts, eight in number, who testified either on the trial of the case or by deposition.
The primary issue concerns the loss or impairment by plaintiff of the aforesaid physical function. The complaints are purely subjective. The consensus of the medical opinions is plaintiff’s complaint is without foundation in fact. The accident produced no disturbance or injury to the olfactory nerve governing and controlling the sense of smell. Therefore, plaintiff’s subjective complaints were unsupported by any positive or objective findings. Moreover, it was testified by, at least, a majority of the experts that for an injury of this kind to affect the olfactory nerve the force of the impact would necessarily have been so severe and so intense as to prevent, in all likelihood, plaintiff’s survival. This was said to be due to the close connection of this nerve with and its proximity to the brain.
Dr. Fraser concluded from his examinations during October and December, 1957, plaintiff was fully capable, physically and mentally, to return to his work of operating a power saw, sawing pulpwood. Dr. D. M. Kingsley, who examined plaintiff on two occasions, the last time as of October 28, 1957, testified that his examinations revealed no disability other than some stiffness in the neck, which he concluded was exaggerated and probably voluntary on plaintiff’s part. Dr. Ben Fendler, a specialist in the treatment of diseases of the eye, ear, nose and throat, examined plaintiff also on October 28, 1957, at the instance of plaintiff’s attorney, but whose testimony was taken at the instance of the defendants. His findings were a mild deviation of the tip of the nose and a slight deviation of the nasal septum with an old ununited fracture of the nasal bone. All of these were insignificant so far as plaintiff’s ability to perform manual labor. While no complaint was made to the doctor of plaintiff’s claim of the loss of smell, the doctor found no damage to the olfactory nerve which could have produced such a result. Neither did the doctor find any justification for plaintiff’s complaints of headaches.
Dr. James F. Gavin, a specialist also in otolaryngology and ophthalmology, reached a similar conclusion as the result of an examination of January 15, 1958, particularly that there was no basis by which he could account for plaintiff’s loss of smell. Dr. Frederick C. Boykin, a neurosurgeon, found no neurological indications of disability or any basis for plaintiff’s claim of the loss of a physical function. Dr. W. S. Easter-ling, specializing in neuropsychiatry, who examined plaintiff March 11, 1958, testified that as a result of a neurological examination made by him plaintiff was not suffering a traumatic neurosis. His findings were entirely negative. This conclusion was contrary to that reached by Dr. H. T. Posey, who also specializes in neuropsychiatry, and that of Dr. H. K. Faludi, a neurosurgeon. Dr. Posey, however, found no evidence of disability from a physiological standpoint or that plaintiff’s injuries could possibly result in the loss of smell. Dr. Faludi accounted for plaintiff’s disability on a physiological basis, particularly a cervical neck sprain. Plaintiff’s loss of smell was attributed by him to the injury.
It is unnecessary, in our opinion, to enter into a more detailed discussion of the technical medical testimony of the expert witnesses, all of which has received our most careful consideration. Our learned brother of the District Court concluded that the testimony preponderated in favor of the defendants. We not only fail to find any manifest error in the conclusions reached by him, but from our own review of the record, particularly of the expert testimony, we are convinced of the correctness thereof.
*834 Although the judgment properly rejected plaintiff’s demands, failure to assess him with costs was error, notwithstanding he was authorized to prosecute this action in forma pauperis under the provisions of LSA-R.S. 13:4526 et seq. Section 4528 of the Statute provides that if a litigant exercising this privilege is cast he shall be condemned to pay the costs incurred by him as well as the costs recoverable by the other parties to the action. Coulon v. Anthony Hamlin, Inc., 233 La. 798, 98 So.2d 193; Id., La.App., 93 So.2d 557; Williams v. Ford, La.App., 102 So.2d 789.
The judgment should be, and it is hereby, amended to assess the costs against plaintiff-appellant and, as thus amended, is affirmed.
Amended and affirmed.